UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| RAYMOND SMITH, | ) No. CV 06-5461 FFM |
| Plaintiff, | ) MEMORANDUM DECISION AND ) ORDER |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

Plaintiff brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration denying his application for a period of disability and Supplemental Security Income benefits.  The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. Pursuant to the case management order entered on September 6, 2006, the parties filed a joint stipulation detailing each party's arguments and authorities on June 11, 2007. The Court has reviewed the administrative record ("AR"), filed by defendant on March 21, 2007, and the Joint Stipulation.  For the reasons stated below, the decision of the Commissioner is affirmed.

/ / /

/ / /

/ / /

/ / /

PROCEDURAL HISTORY

On July 28, 2003, plaintiff filed an application for a period of disability and Supplemental Security Income benefits.  Plaintiff alleged a disability onset of the same date.  Plaintiff's claim was denied initially on November 26, 2003.  Plaintiff timely requested a hearing by an administrative law judge ("ALJ").  ALJ Kevin M. McCormick held a hearing on August 23, 2004.  Plaintiff appeared with counsel and testified at the hearing.  On March 4, 2005, the ALJ issued a decision denying benefits. Plaintiff sought review of this decision before the Appeals Council, who denied the request for review on July 24, 2006.

Plaintiff commenced the instant action on September 5, 2006.

CONTENTIONS

Plaintiff raises one issue in this action:

1.  Whether the ALJ properly evaluated the opinions of the treating physicians and medical advisor, Dr. Alpern?

STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied.  *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more than a mere scintilla" but less than a preponderance.  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  This Court must review the record as a whole and consider adverse as well as supporting evidence.  *Green v. Heckler*, 803 F.2d 528, 929-30 (9th Cir. 1986). / / /

1  Where evidence is susceptible to more than one rational interpretation, the

2  Commissioner's decision must be upheld.  *Gallant v. Heckler*, 753 F.2d 1450, 1452

3  (9th Cir. 1984).

4

5                                      DISCUSSION

6        Plaintiff contends that in determining plaintiff's residual functional capacity

7  ("RFC") the ALJ failed to evaluate properly the opinions of Dr. Mouazzen (treating

8  physician), Dr. Domaguing (treating physician), and Dr. Alpern (medical expert).

9  Plaintiff alleges that the ALJ improperly rejected limitations expressed by these

10  doctors.

11        In evaluating medical opinions, the case law and regulations distinguish among

12  three types of physicians:  (1) those who treat the claimant (treating physicians); (2)

13  those who examine but do not treat the claimant (examining physicians); and (3) those

14  who neither examine nor treat the claimant (non-examining physicians).  *See* 20 C.F.R.

15  §§ 404.1502, 416.927; *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally,

16  the opinions of treating physicians are given greater weight than those of other

17  physicians, because treating physicians are employed to cure and therefore have a

18  greater opportunity to know and observe the claimant.  *Smolen v. Chater*, 80 F.3d

19  1273, 1279 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)

20  (citing *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)).  Although the treating

21  physician's opinion is entitled to great deference, it is not necessarily conclusive as to

22  the question of disability.  *Magallanes*, 881 F.2d at 751 (citing *Rodriguez v. Bowen*,

23  876 F.2d 759, 761-62 (9th Cir. 1989)).  Where the treating physician's opinion is

24  uncontradicted, it may be rejected only for "clear and convincing" reasons.  *Lester*, 81

25  F.3d at 830.  Where the treating physician's opinion is contradicted, the ALJ may

26  reject it in favor of a conflicting opinion of an examining

27  / / /

28  / / /

3

1  physician if the ALJ makes findings setting forth specific, legitimate reasons for doing

2  so that are based on substantial evidence in the record.  *Ramirez v. Shalala*, 8 F.3d

3  1449, 1453-54 (9th Cir. 1993).

4         A.  Dr. Mouazzen's opinion

5         Plaintiff asserts that Dr. Mouazzen, plaintiff's cardioligist, opined in February

6  2003 that plaintiff had chest pains consistent with angina.  (Citing AR 320; *see also*

7  AR 528).  Dr. Mouazzen also provided a letter in August 2004 stating that plaintiff's

8  symptoms interfered with his abilities to work and that he "suggested [plaintiff] not

9  work at this time."  (AR 529).

10        In rejecting Dr. Mouazzen's opinion that plaintiff not work "at this time," the

11  ALJ provided the following reasons:

12             I reject the opinion of the treating physician expressed by Dr. Mouazzen

13             in his current report dated August 20, 2004 (Exhibit 16F).  First, the

14             opinion that the claimant is disabled for any period of time is an issue

15             reserved to the Commissioner (Social Security Ruling 96-5p).  Under this

16             rule, it is entitled to no special weight (Exhibit 16F).  Other reasons exist

17             to reject it.

18

19             The medical records of Dr. Mouazzen reflect that the claimant began

20             treatment making significant complaints which were extensively

21             investigated with diagnostic testing, and any cardiac/angina reason for the

22             chest pain was ruled out.  Furthermore, the chest pains were described as

23             occurring only occasionally; and at no time did Dr. Mouazzen use the

24             description of the claimant having a "severe" cardiac condition.  In fact,

25             Dr. Mouazzen describes the claimant as stable several times (Exhibit

26             15F/4 and 15F/2), and his final conclusion, in the report of April 2004

27             after specifically addressing the results of the echocardiogram performed

28             in March 2003 and the cardiac Doppler study with color, was that the

symptoms were not suggestive of angina or cardiac origin but were rather
from a "lack of exercise" (Exhibit 15F/2). Dr. Mouazzen, and every other
physician, has excluded the claimant's cardiac impairments as the cause
for his alleged continuing chest pain. Exhibit 16F is thinly veiled, but
incredulous, attempt to suggest that these cardiac impairments are
resulting in symptomatic "sever chest pain." Dr. Mouazzen's records
repeatedly contradict this. I also note that the claimant was seen by Dr.
Mouazzen only on a periodic basis about every two months and then even
this schedule was expanded recently to every four months. This is not
indicative of a severe condition suggested in the medical source statement
of August 20, 2004 (Exhibit 16F). Also, all of the diagnostic tests
performed after the surgery of October 2002 show good cardiac function.
This is substantial objective medical evidence inconsistent with the
opinions rendered. These important medical facts were not even
mentioned in the report of August 20, 2004 (Exhibit 16F). Dr.
Mouazzen's failure in Exhibit 16F to even attempt to explain his opinion
in light of the significant contradictory evidence in his own records speaks
volumes. This leaves the impression that this report was likely procured
by the claimant to bolster this and/or his unemployment claim. The only
explanation for the opinions is advocacy, not facts, when compared to the
details of the treatment records. It, therefore, is not a well supported and
reasoned medical opinion.

(AR 37-38).

The Ninth Circuit has held that "[t]he ALJ need not accept the opinion of any
physician, including a treating physician, if that opinion is brief, conclusory, and
inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957
(9th Cir. 2002); *see also Matney v.Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). As
noted by the ALJ, not only was Dr. Mouazzen's conclusion that plaintiff was unable to

1  work unsupported by any objective evidence, but it was inconsistent with all the test

2  results as well as with Dr. Mouazzen's own previous findings.  The test results

3  demonstrated that plaintiff's alleged chest pain was not cardiac related.

4          Here, the ALJ provided specific and legitimate reasons for rejecting Dr.

5  Mouazzen's opinion.  Moreover, the ALJ's conclusions were well supported by the

6  record.  Thus, the Court finds no error.

7          B.  Dr. Domaguing's opinion

8          Plaintiff refers to a "Diabetes Mellitus Residual Functional Capacity

9  Questionnaire" completed by Dr. Domaguing and submitted to the Appeals Council

10  after the ALJ's unfavorable determination.  In the questionnaire, Dr. Domaguing

11  checked boxes to indicate that plaintiff suffers from numerous symptoms and

12  concluded that plaintiff can sit for only 20 minutes and stand for only 15 minutes at a

13  time, and can do so for a total of less than 2 hours each in an 8 hour day.  (AR 539-40).

14  These restrictions are considerably more limiting than those found by the ALJ.

15  Plaintiff contends that the Appeals Council erred in rejecting these limitations.

16          The Appeals Council explained its rejection of Dr. Domaguing's restrictions as

17  follows:

18          The Appeals Council also has accorded Dr. Domaguing's medical source

19          statement little weight.  His assessed limitations are not supported by the

20          record and Dr. Domaguing has not provided clinical documentation in

21          support of his assessed limitations.  Moreover, it appears that [plaintiff]

22          did not start seeing Dr. Domaguing until June 27, 2006, 15 months after

23          the issuance of the decision.

24  (AR 8).

25          Although the Appeals Council incorrectly stated that Dr. Domaguing did not

26  begin treating plaintiff until 15 months after the issuance of the ALJ's decision, that

27  error does not require reversal.  The principal reasons expressed by the Appeals

28  Council for rejecting the submission are supported by the record.  Dr. Domaguing did

6

1  not provide any clinical documentation to support his findings and the limitations he

2  assessed were not supported by the record.  Significantly, the ALJ summarized Dr.

3  Domaguing's pre-hearing records and found nothing justifying such severe

4  restrictions.  Moreover, the very fact that the questionnaire was created and submitted

5  after the ALJ's decision renders it less persuasive.  *See Macri v. Chater*, 93 F.3d 540,

6  544 (9th Cir. 1996).  Finally, the Ninth Circuit has held that check-off forms that do

7  not contain an explanation of the bases for the conclusions may be rejected.  *See Crane*

8  *v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996).

9       C.  Dr. Alpern's opinion

10      The ALJ largely accepted the testimony of the medical expert, Dr. Alpern.

11 However, he rejected Dr. Alpern's opinion of restrictions on plaintiff's ability to

12 stand/walk.  Whereas, Dr. Alpern limited plaintiff to four hours standing/walking; the

13 ALJ found plaintiff capable of standing/walking for up to six hours in an eight hour

14 work day.

15      At the hearing, when asked to explain the basis for his opinion as to plaintiff's

16 standing/walking limitation, Dr. Alpern testified as follows:

17      Dr. Alpern:  I believe that by his [habitus] and the way he is,

18                    and his description of what he's done, it would

19                    be less than eight hours and I think this is the,

20                    given that the there is no obvious mechanical

21                    problem and that his heart is functioning well,

22                    there would be, sort of moderate level.

23      ALJ:          So, I'm trying to understand.  As far as his

24                    [habitus], are you talking about his body

25                    [INAUDIBLE]?

26      Dr. Alpern:  Yes, sir.

27      ALJ:          So, just based on his weight?

28      Dr. Alpern:  Weight.

| | | |
|---|---|---|
| 1 | ALJ: | Are there any impairments that combine with |
| 2 | | the weight that would support that four hours - - |
| 3 | Dr. Alpern: | Yes, - - |
| 4 | ALJ: | Taking aside the weight. |
| 5 | Dr. Alpern: | Yes, the weight and the peripheral neuropathy. |

6    (AR 852).

7          Dr. Alpern also testified that he considered plaintiff's allegations of chest pain in

8    his RFC assessment:

| | | |
|---|---|---|
| 9 | ALJ: | Did you factor into claimant's complaints of |
| 10 | | chest pain, even the origin is not clear, into your |
| 11 | | residual function capacity assessment? |
| 12 | Dr. Aplern: | Yes. |

13    (AR 857).

14          In rejecting the standing/walking aspect of Dr. Alpern's opinion, the ALJ

15    explained:

16          I give less weight to the opinion of Dr. Alpern that the claimant should be

17          reduced to four hours of standing and walking and should have a sit-stand

18          option for several reasons.  First, he stated that [he] factored in the

19          claimant's subjective atypical chest pain symptoms.  Dr. Alpern testified

20          that there was no medically determinable impairment established in the

21          record which would reasonably cause the claimant's atypical chest pain

22          symptoms.  Thus, Dr. Alpern's opinion that the claimant is reduced to

23          four hours standing and walking in part because of his subjective chest

24          pain lacks the essential foundation of an underlying medical determinable

25          impairment to warrant such a limitation.

26

27          Furthermore, Dr. Alpern mentioned "body habitus" as an additional factor

28          he considered and believed warranted the reduced walking and/or

1   standing limitations.  I recognize that SSR 02-1p and its predecessor

2   attempt to distinguish between obesity and "body habitus."  I assume Dr.

3   Alpern was referring to claimant's obesity.  Dr. Alpern did not specify

4   obesity as the sole reason for the reduced capacity to walk and/or stand,

5   but rather, mentioned it in concert with the atypical chest pain.  Since the

6   chest pain aspect of his opinion lacks a foundation, his whole opinion on

7   this specific point fails.  I reject Dr. Alpern's specific opinion regarding a

8   limitation to four hours standing and walking and the need for a sit-stand

9   option.  Greater weight is given to the examining physicians opinions and

10  facts in the treatment records, all of which support a capacity to walk

11  and/or stand at least six hours and no need for sit-stand option.  Other than

12  on this narrow issue, Dr. Alpern's opinions are supported by and

13  consistent with the record.

14

15  In summary, I find the claimant's obesity does not warrant any additional

16  functional limitations.

17  (AR 37).

18      Plaintiff asserts that the ALJ failed to take into account plaintiff's peripheral

19  neuropathy in rejecting Dr. Alpern's standing/walking limitation.  Plaintiff also asserts

20  that the ALJ erroneously focused on Dr. Alpern's alleged reliance on plaintiff's chest

21  pain; whereas, Dr. Alpern did not base his limitations on plaintiff's chest pain

22  allegations.

23      To the extent the ALJ erred in not specifically assessing Dr. Alpern's reliance on

24  neuropathy, that error was harmless.  *See Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th

25  Cir. 1991) (harmless error rule applies to review of administrative decisions regarding

26  disability).  No evidence suggested that plaintiff's early neuropathy limited plaintiff's

27  ability to function in any manner.  Dr. Alpern noted that plaintiff was unsurprisingly

28  not being treated for the condition because the neuropathy is generally only treated "if

9

1  it becomes severe." (AR 853). Thus, Dr. Alpern did not consider the condition severe.

2  (AR 32). More importantly, the ALJ relied on the findings of two consultative

3  physicians who examined plaintiff, something Dr. Alpern did not do. The ALJ noted

4  that Dr. Nancy Hanna acknowledged plaintiff's history of diabetes with peripheral

5  neuropathy and found that plaintiff was able to walk/stand for six hours out of an eight

6  hour day. (AR 36). Indeed, Dr. Hanna's tests showed normal neural function. (See

7  AR 230; *see also* AR 424 (Dr. Siciarz-Lambert's test results showing normal neural

8  function). In addition, the ALJ noted that Dr. Siciarz-Lambert found plaintiff capable

9  of standing/walking without limitation despite plaintiff's obesity. (AR 36). Thus, the

10  ALJ's findings were supported by the record.

11      With respect to chest pains, Dr. Alpern testified that he took plaintiff's

12  allegations as to those pains into account in assessing plaintiff's RFC. For reasons

13  articulated by the ALJ, the ALJ did not find the chest pain allegations credible.

14  Therefore, it was appropriate for the ALJ to explain why he discounted the chest pain

15  allegations.

16          D. The Vocational Expert's opinion

17      Lastly, plaintiff asserts that the ALJ improperly characterized plaintiff's past

18  relevant work as that of a cashier. Although plaintiff admittedly worked as a cashier at

19  Texaco and Exxon gasoline stations, plaintiff contends that 5% of the time he stocked

20  shelves. Among numerous other jobs, plaintiff also worked as a security guard and as

21  a cashier and stocker for Kroger. The vocational expert ("VE") characterized

22  plaintiff's prior work as including, among other jobs, cashier at a gas station (light)

23  (DOT 211.462-010 - Cashier II), security guard (light) (DOT 372.267-034) and stock

24  clerk (heavy) (DOT 299.367-014). The VE further testified that, if limited to six hours

25  standing/walking and lifting 20 pounds occasionally and 10 pounds frequently,

26  plaintiff, among other jobs, could still perform as a cashier, but not as a stock clerk.

27  (AR 863 - 865 (combining hypotheticals one and two)). In response to hypothetical

28  three (which mirrored the ALJ's eventual RFC finding), the VE testified that plaintiff

could perform as a cashier.  (AR 869).  In response to a hypothetical mirroring all of Dr. Alpern's limitations (i.e., the most restrictive hypothetical), the VE testified that plaintiff could perform the cashier position as he had actually performed it.  (868 - 870).

Plaintiff contends that the VE improperly characterized plaintiff's cashier position, because the DOT definition cited by the VE does not require any stocking. Plaintiff claims that the VE cannot take the least demanding aspect of a job to characterize the entire job.   However, plaintiff testified that 95% of the time he worked as a cashier.  Pursuant to SSR 82-61, past relevant work means either (1) "The actual functional demands and job duties of a particular past relevant job; *or* [(2)] The functional demands and job duties of the occupation as generally required by employers throughout the national economy."  (SSR 82-61 (emphasis in original)). The DOT describes jobs as generally practiced in the national economy.  Thus the fact that plaintiff's prior job required a slight percentage of stocking is not dispositive.  The Court finds that the VE properly characterized plaintiff's prior work experience as including Cashier II.

For the foregoing reasons, the judgement of the Commissioner is affirmed.

IT IS SO ORDERED.

DATED:  March 7, 2008                          /S/ Frederick F. Mumm
                                                                     FREDERICK F. MUMM
                                                                  United States Magistrate Judge